**Emile RUTNER, Plaintiff,**

v.

**Robert C. SEAMANS, Jr., et al.,
Defendants.**

**Civ. A. No. 71–71.**

United States District Court,
District of Columbia.

Oct. 16, 1973.

John I. Heise, Jr., Silver Spring, Md., for plaintiffs.

Robert M. Werdig, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM–OPINION

GASCH, District Judge.

This controversy arises under Air Force Regulation 40–922, "Filling High Grade Civilian Positions," paragraph 11, "Selection From Outside the Air Force." [1] The facts of the case as agreed upon by the parties are set out in the Court's Memorandum-Order of June 21, 1973, in which the Court ordered the Air Force to submit further documentation pursuant to AFR 40–922, par. 11, justifying its selection of Dr. Donald Ball over Dr. Emile Rutner for the position in question.

The material submitted by the Air Force is a composite of letters, memoranda and other documents composed contemporaneously with the selection of Dr. Ball, and some other memoranda prepared pursuant to the administrative and judicial reviews sought by Dr. Rutner. The document was submitted to the Court for *in camera* review, because a number of the letters and evaluations of the two candidates were taken from confidential personnel files. Attached hereto as appendices are certain portions of the Air Force's most recent review, with confidential material excised.[2]

1. AFR 40–922, par. 11, reads as follows:
   11. Selection From Outside the Air Force. In some instances, it may be desirable to fill a high grade position by new appointment or transfer of an individual from another agency. Prior to final selection of such a candidate, his qualifications will be carefully reviewed and compared with qualified Air Force candidates. If his qualifications indicate he is clearly better qualified and he is selected to fill the position, the actions will be documented to evidence the superior or special qualifications of the selected candidate.

2. Although drawn from confidential files, the covering memorandum and two statistical summary statements prepared by an Air Force Personnel Staffing Specialist August 24, 1973, are not a part of the confidential files. These summary statements, attached as appendices "B" and "C" hereto, reflect the rankings given to each candidate by various associates, supervisors or references. To protect the con-

The job description of this position indicates that the candidate must be competent in two separate areas: the technical and the administrative. There evidently were no questions as to Dr. Rutner's technical abilities, and if this were all that were involved in the job, he may well have been the successful candidate. The job also calls, however, for the ability to be able to communicate expertly on all levels, represent the Air Force in high-level conferences both within and without the government, and administer and oversee technical programs, all of which require more than mere technical competence.[3] Those Air Force officials who had the responsibility for filling this position felt at the time that Dr. Rutner fell short of the necessary qualifications in this latter category, and the material contained in the confidential personnel files bears out this conclusion. In every respect, evaluation of Dr. Rutner as to those traits that involve dealing with people in an administrative capacity were less favorable than the evaluations of Dr. Ball,[4] on the same questions.

Unfortunately, when Dr. Rutner was notified of the selection of Dr. Ball, the letter was worded so as to indicate that "an equally qualified applicant" had been hired. As this was clearly not in accordance with AFR 40–922, par. 11, Dr. Rutner was justified in demanding a further explanation for this decision. The Air Force did not present adequate documentation of its decision, as required by par. 11, and Dr. Rutner was justified in pursuing his appeal to this Court. Since it appears that there is a factual basis for concluding the Air Force did select a candidate with superior qualifications, this Court will not overturn its decision; however, in future par. 11 hirings, the Air Force should in making selections of outside personnel adhere to the requirements of its regulations.

fidentiality of the personnel files, the names of these individuals have been deleted from the attachments. To alleviate doubts as to the objectivity of those who made these ratings, it should be noted that all of those rating Dr. Ball knew him as employers or supervisors; four of the seven rating Dr. Rutner were his employers or supervisors. It must be assumed that these individuals would be more objective in comparing the candidate with the requirements for the position than mere friends and acquaintances.

3. The Position Description issued by the Air Force May 1, 1967, includes the following paragraphs under the heading "Duties and Responsibilities:"

1. *Program Formulation, direction and control*—Formulates, establishes and administers a basic research program with an annual budget of approximately a million dollars in the chemical sciences . . . .

\*  \*  \*  \*  \*

3. *Evaluation of Research Potentials*—In his area of scientific interest: reviews research proposals, makes evaluative visits of research efforts, provides estimates of the technical competence of principal investigators, provides estimates of the suitability of the research environments and fa-

cilities, acts for the Air Force in making decisions to initiate, continue or terminate research efforts.

Under the heading "Controls Over Work:"

\*  \*  \*  \*  \*

2. Acts for the Director of Chemical Sciences in conducting basic research in support of Air Force requirements. Exercises full responsibility for the technical excellence of research undertaken and the appropriativeness for Air Force support of projects in his area of assignment; specifically, this includes cognizance over scientific and technical actions; authority to monitor and supervise contractors of research programs in universities and other research organizations conducting work for the Air Force Office of Scientific Research.

4. Because the document that forms the basis for this opinion was subject to *in camera* inspection, Dr. Rutner has not had the benefit of its review. The material submitted to the Court by Dr. Rutner September 20, 1973, which the Court has considered along with the Air Force documentation, addresses only the technical competence of the two candidates, and thus has no bearing on their respective administrative abilities.

## APPENDIX A

### COVER MEMORANDUM TO AUGUST 1973 AIR FORCE REVIEW OF DR. BALL'S HIRING

24 August 1973

Memo for the Record

Subject: Qualification Comparison for Chemist, GS–1320–15 AFOSR

Applicants: Dr. Donald Lee Ball
               Dr. Emile Rutner

Both applicants meet basic eligibility requirements outlined in the X–118 (Civil Service Qualification Standards for General Schedule Positions.)

In addition to basic requirements, qualifications of each applicant must be matched very carefully to the requirements of the position to be filled.

The position description for the subject position requires an authority on chemical metallurgy, condensed phase equilibria, and ultra-high pressures. The primary purpose of the position is to provide a chemist with demonstrated scientific and administrative competence to execute a major phase of this research program. A review of the applications for the referenced applicants reveals:

Dr. Ball has shown recent directly related experience particularly in chemical metallurgy while Dr. Rutner's experience indicates less recency in chemical metallurgy. Further, Dr. Ball's technical and administrative competence has been highly substantiated through technical references. Dr. Rutner's references rate his technical ability considerably lower than Dr. Ball's plus the only reference to his administrative ability is extremely critical (Dr.   *   letter dated 5 June 1967).

/s/ Ruby H. Giddings

| RUBY H. GIDDINGS | 4 Atch |
| --- | --- |
| Personnel Staffing Specialist | 1. Dr. Rutner's Ltr/w SF–57 |
| | 2. Dr. Ball's SF–57 |
| | 3. Position Description #M–354 |
| | 4. Message May 67 |

\* Name omitted due to confidentiality of the letter.

## APPENDIX B

### STATISTICAL CHART OF DR. BALL'S RECOMMENDATIONS
### (ITEMS "B," "D" AND "F" INDICATE QUALITIES WHICH BEAR ON ADMINISTRATIVE ABILITIES)

DR. DONALD LEE BALL—VOUCHERS           NAMES OMITTED

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| a. | Dependability—Accepts assigned responsibility and effectively accomplishes duties in approved manner within time established. | 3 | 2 | 3 | 3 |
| b. | Cooperation—A team worker, maintains good working relationship. | – | 3 | 3 | 3 |
| c. | Initiative and Creativeness—Ability to think along original lines and to work without detailed instructions or supervision. | 3 | 2 | 2 | – |

| | | | | |
|---|---|---|---|---|
| d. | Emotion Stability—Poise and judgment in meeting adverse or emergency situation. | — | 3 | 3 | 3 |
| e. | Adjustability—Ability to adjust to changes in working or living environments. | 2 | 2 | 2 | 2 |
| f. | Consideration for Others—Courteous in daily contacts, including attitude toward different races, religions, and nationalities. | 3 | 3 | 3 | 3 |
| g 1. | Job Knowledge—Has knowledge of techniques and procedures applicable to the job for which being considered. | 3 | 3 | | 2 |
| 2. | | | | | |
| 3. | | | | | |
| | TOTAL POINTS/FACTORS | 14/5 | 18/7 | 16/6 | 16/6 |
| | | 93.3% | 85.7% | 88.8% | 88.8% |
| | | | | | 89.1% |
| | | | | | Average Score |

** Teacher

# APPENDIX C

## STATISTICAL CHART OF DR. RUTNER'S RECOMMENDATIONS (ITEMS "B," "D" AND "F" INDICATE QUALITIES WHICH BEAR ON ADMINISTRATIVE ABILITIES)

DR. EMIL RUTNER—VOUCHERS ·      NAMES OMITTED

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| a. | Dependability—Accepts assigned responsibility and effectively accomplishes duties in approved manner within time established. | 2 | 3 | 1 | 3 | | 3 | 2 |
| b. | Cooperation—A team worker, maintains good working relationship. | 2 | — | 1 | 3 | | 2 | 1 |
| c. | Initiative and Creativeness—Ability to think along original lines and to work without detailed instructions or supervision. | 2 | 2 | 2 | 2 | 3 | 3 | 3 |
| d. | Emotional Stability—Poise and judgment in meeting adverse or emergency situation. | — | 2 | 2 | 2 | 2 | 1 | 1 |
| e. | Adjustability—Ability to adjust to change in working or living environments. | — | 1 | 2 | 2 | 3 | 2 | 2 |
| f. | Consideration for Others—Courteous in daily contacts, including attitude toward different races, religions, and nationalities. | 2 | 2 | 1 | 3 | 2 | 2 | |
| g 1. | Job Knowledge—Has knowledge of techniques and procedures applicable to the job for which being considered. | 2 | | 2 | | 3 | 2 | 3 |
| 2. | | 1 | — | | | | 2 | 2 |
| 3. | | 2 | — | — | — | — | 2 | 1 |
| | TOTAL POINTS/FACTORS | 13/7 | 10/5 | 11/7 | 15/6 | 13/5 | 19/9 | 15/8 |
| | | 61.9% | 66.6% | 52.4% | 83.3% | 86.6% | 70.4% | 62.5% |
| | | | | | | | | 69.1% |
| | | | | | | | | Average Score |

Insuff Opportunity to observe—no rating      Better Than Average = 2
Outstanding = 3      Adequate = 1      Unsatisfactory = 0